UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:09CV92-J

GREGORY BRAZZELL                                                    PLAINTIFF

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security                                 DEFENDANT

## **MEMORANDUM OPINION AND ORDER**

Before the Court is claimant Gregory Brazzell's Complaint seeking judicial review of the unfavorable decision rendered by the defendant Commissioner denying his claims for Disability Insurance ("DIB") and Supplemental Security Income ("SSI") benefits. After examining the administrative record, the arguments of the parties, and the applicable authorities, the Court is of the opinion that the matter should be remanded to the Commissioner for further consideration.

### PROCEDURAL HISTORY

Plaintiff filed his applications for DIB and SSI benefits on December 6, 2005 alleging that he became disabled on July 15, 2004 at the age of 42 as a result of a left knee injury with full replacement and six surgeries, disc fusion/plate in neck, disc degeneration/scoliosis (Tr. 127). Claimant's past work includes chicken plant maintenance technician, industrial maintenance, security guard, house framer, house painter, and darkroom film technician (Tr. 141-142). Following a hearing at which the both the claimant and a vocational expert offered testimony, Administrative Law Judge Kathleen M. Thomas ("ALJ") found that the claimant suffers from severe impairments of status post left knee replacement, and degenerative disc disease of the cervical and lumbar spine (Tr. 58). The ALJ found that these conditions prevent plaintiff from returning to some of his

previous work, but he still remains capable of performing the security guard and darkroom film technician jobs. The ALJ found that the claimant retains the residual functional capacity to perform light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work. He can lift and carry 20 pounds occasionally and 10 pounds frequently. She [sic] can sit, stand, and walk about six hours each in an eight-hour workday. He should never climb ladders, ropes or scaffolds, and should avoid hazards such as machinery and heights. He could occasionally climb ramps and stairs, and crouch. (Tr. 59)

Plaintiff appeals from this unfavorable decision.

## STANDARD OF REVIEW

The task of this Court on appellate review is to determine whether the administrative proceedings were flawed by an error of law, and to determine whether substantial evidence supports the decision of the Commissioner, 42 U.S.C. §405(g); Elam ex. Rel. Golay, v. Commissioner, 348 F.3d 124, 125 (6th Cir. 2003). Where the Commissioner's decision is supported by substantial evidence, the reviewing court must affirm, Studaway v. Secretary of HHS, 815 F.2d 1074, 1076 (6th Cir. 1987). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, Kirk v. Secretary of HHS, 667 F.2d 524 (6th Cir. 1981); Jones v. Secretary of HHS, 945 F.2d 1365 (6th Cir. 1991).

The substantiality of the evidence is to be determined based upon a review of the record taken as a whole, not simply some evidence, but rather the entirety of the record to include those portions that detract from its weight, Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984). So long as the decision of the Commissioner is supported by substantial evidence, it must be upheld by the court even thought the record might support a contrary conclusion, Smith v. Secretary of HHS, 893 F.2d 106, 108 (6th Cir. 1989). The substantial evidence standard "presupposes that there is a zone of choice

within which decision makers can go either way, without interference from the courts," Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).

## ANALYSIS

The plaintiff in this case made a claim for a closed period of disability. In his applications for DIB and SSI benefits, he alleged disability beginning July 15, 2004, the date upon which he submitted to an arthroscopic anterior cruciate ligament reconstruction of the left knee (Tr. 96, 101, and 213). In April of 2006, at about the time of the state agency initial denial decision and secondary to his financial situation and with the approval of his treating physician, Dr. Gay Richardson, the plaintiff commenced working 25 hours per week at a sedentary desk job at Marilyn's Medical Freedom (Tr. 62, 334). The ALJ characterized the plaintiff's resumption of part-time sedentary work as a "return [] to substantial gainful activity [SGA]" (Tr. 56). In August of 2006, Dr. Richardson authorized 32 hours per week (Tr. 332). The plaintiff apparently returned to full time work in October of 2006 (Tr. 28). In light of his resumption of SGA in April of 2006, at the outset of the administrative hearing herein, the plaintiff, through counsel, amended his claims to assert only a claim for a closed period of disability from December of 2004 through March of 2006 (Tr. 20).

Although it is not entirely clear to the undersigned why the parties chose to forego the original onset date of July 15, 2004 and instead utilize December of 2004 as the beginning of the closed period, the December 2004 date does correspond to the month in which the plaintiff's leg cast was removed following knee surgery and in which he was subsequently released to return to work. In any event, despite his release to return to work in December of 2004, the plaintiff was unable to return to work because, during the period of time in which his leg was in a cast and he was

3

recuperating from knee surgery, the plaintiff experienced a severe exacerbation of his neck and back pain, with radicular symptoms affecting his dominant right upper extremity. These symptoms related to an old injury that occurred in 1995 in which the plaintiff severely injured his neck and fractured his lower back at the L1 level. In September of 2005, due to "intractable cervical radiculopathy" Dr. Sean McDonald performed an anterior cervical diskectomy and fusion with zephyr plating at the C5-C6 and C6-C7 levels (Tr. 238).

At the administrative hearing, the plaintiff described his symptoms during the period from July 15, 2004, when he underwent knee surgery, through September of 2005, when he underwent neck surgery, as follows (Tr. 25-26):

> When I was off for that six months with that cast [that] is what finished my back [i.e., exacerbated the residual effects of the injuries from 1995] . . . . Basically after being on that couch and chair for six months with a [leg] cast . . . my right arm and shoulder, mainly . . . I could barely hold a fork at times . . . . [T]he skin felt like it was separating from my bones . . . . After he took the MRI, Dr. McDonald said that [something] was pinching the nerves really bad and he needed to go in there and scope it out, separate it.

After neck surgery in September of 2005, the plaintiff wore a neck brace for three months until approximately December of 2005 (Tr. 26). By March of 2006, although his neck complaints and right upper extremity symptoms were better, the plaintiff was experiencing significant lower back pain associated with the old L1 fracture (Tr. 266-267). Dr. McDonald placed the claimant in a back brace, but the claimant testified that the brace "didn't help much" (Tr. 26). Dr. McDonald eventually concluded that back surgery was not indicated and referred the plaintiff to Dr. Richardson for pain management.

In her decision dated September 1, 2007, the ALJ found that the plaintiff "**has** (emphasis added to show present tense use of the verb) the residual functional capacity [RFC] to perform light

4

work." Finding No. 5. The ALJ based this finding, in part, upon acceptance of the "current evaluation" of the state agency program physician, John Osbourne, dated April 5, 2006, the same month in which the plaintiff returned to part-time sedentary work (Tr. 294-301). The ALJ found that Dr. Osbourne rendered "the most credible assessment of the claimant's [RFC] and [was] persuaded to accept it" (Tr. 62). The ALJ further opined as follows:

> The medical evidence in the record indicates that the claimant has retained the [RFC] to perform light work consistent with work he began in April 2006 for Marilyn's Medical Freedom. He testified that he is now working in child care. There is no period of 12 consecutive months in which the claimant could not have performed any work activity. His allegation that he could not have performed substantial gainful activity from July 15, 2004, due to severe and chronic pain lacks credibility.

The plaintiff's position is that there is a lack of substantial evidence in the administrative record in support of the ALJ's finding that 1) he "has retained," at all times since July 15, 2004, an RFC for "light" work, and 2) there is a lack of substantial evidence that "[t]here is no period of 12 consecutive months in which the claimant could not have performed any work activity." The plaintiff further contends that the ALJ's finding that his allegation of severe and chronic pain during the closed period "lacks credibility" does not comport with governing legal standards.

First, the plaintiff contends that there is a lack of probative medical evidence in support of a conclusion that, during the closed period ending in March of 2006, he retained the ability to perform "light" work. The Court finds this argument persuasive because the only medical opinion of record bearing upon the issue of what the plaintiff can still do despite his impairments is that of Dr. Osbourne and, as noted above, Dr. Osbourne's opinion was given in April of 2006, after the closed period ended in March of 2006. In other words, the ALJ's RFC finding for the closed period was not supported by any probative medical opinion. In Blythe v. Astrue, 2009 WL 425583 this Court had occasion to observe as follows:

5

> There must be some medical support for the ALJ's physical RFC finding because, as a lay individual, an ALJ is "simply not qualified to interpret raw medical data in functional terms." Nguyen v. Commissioner, 172 F.3d 31, 35 (1st Cir. 1999). Thus, in Elliott v. Apfel, 2002 WL 89668, the Sixth Circuit explained as follows:
>
>> When we review the hypotheticals posed by an ALJ to a vocational expert, we ask if evidence in the record supports the hypothetical. If at least one doctor's opinion or report would support the question, we will not conclude that the questions were erroneous. See Hardaway v. Secretary, 823 F.2d 922, 927-28 (6th Cir. 1987).

In Blythe, we concluded that, because there was no medical source opinion in support of the ALJ's finding that the claimant retains the ability to perform "light" work and because the hypothetical contemplated an ability to perform "light" work, a remand was required for further evaluation of the medical evidence. For essentially the same reasons, we now conclude that this same result applies in the present case with respect to the ALJ's evaluation of the plaintiff's claim for a closed period of disability. See also Lang v. Secretary, 1989 WL 40188, in which the Sixth Circuit held that a remand was required because the ALJ's decision focused upon the claimant's condition at the time of the hearing and "no doctor indicates plaintiff could have returned to work prior to [the end of the closed period]."

Next, the plaintiff argues that the ALJ's finding that "[t]here is no period of 12 consecutive months in which the claimant could not have performed any work activity" lacks substantial support. As indicated above, in support of this Finding, the ALJ noted that, in April of 2006, Dr. Richardson approved the plaintiff's return to part-time sedentary work and Dr. Osbourne gave a "current evaluation" consistent with an ability to perform "light" work. The ALJ further observed that the plaintiff is "now" working in child care. The Court concludes that none of these pieces of evidence adequately supports the ALJ's finding. Furthermore, it is not apparent how the plaintiff could have engaged in "light" work during the following time periods: 1) from July 15, 2004, through

December of 2004, the evidence reflects that plaintiff was in a leg cast; 2) from December of 2004, through September of 2005, plaintiff experienced severe radicular symptoms affecting his right dominant upper extremity; 3) from September of 2005, through approximately December of 2005, he was in a neck brace; and 4) in March of 2006, he was wearing a back brace. The plaintiff's argument that the ALJ failed to identify a substantial basis for concluding that he was not disabled during any closed period after July 15, 2004 is persuasive. See Brown v. Massanari, 167 F.Supp.2d 1015 (N.D.Ill., 2001) (despite the fact that the ALJ found, in conclusory terms, that the claimant had not been disabled through the date of the ALJ's decision, the ALJ's emphasis on current limitations and use of the present tense when specifically discussing those limitations show that the ALJ failed to adequately consider the extent of the claimant's limitations during the closed period); see also Widener v. Astrue, 2009 WL 2778215 (E.D.Ky.) (the ALJ focused on the claimant's condition at the time of hearing and did not adequately consider whether multiple surgeries during the closed period rendered her incapable of working).

Finally, the plaintiff argues that the ALJ's credibility assessment for the closed period does not comport with governing legal standards. In Social Security disability cases, an important issue is often the degree of limitations caused by pain and other subjective symptoms alleged by the claimant. 20 C.F.R. 404.1529(c) and 416.929(c) describe the kinds of evidence that an ALJ should consider when determining the credibility of an individual's statements:

1) Daily activities;

2) The location, duration, frequency, and intensity of pain or other symptoms;

3) Precipitating and aggravating factors;

7

4) The type, dosage, effectiveness, and side effects of any medication taken to alleviate your pain or other symptoms;

5) Treatment, other than medication, received for relief of pain or other symptoms;

6) Any measures used to relieve pain or other symptoms (e.g., lying flat on the back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

7) Other factors concerning functional limitations and restrictions due to pain or other symptoms.

"[W]hile credibility determinations regarding subjective complaints rest with the ALJ, those determinations must be reasonable and supported by substantial evidence." Rogers v. Commissioner, 486 F.3d 234, 249 (6th Cir. 2007). Furthermore, Social Security Ruling SSR 96-7p provides as follows:

> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

For example, an ALJ "may distrust a claimant's allegations of disabling symptomatology if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other." Moon v. Sullivan, 923 F.2d 1175, 1183 (6th Cir. 1990). In other words, "discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among

the medical reports, claimant's testimony, and other evidence." Walters v. Commissioner, 127 F.3d 525, 532 (6th Cir. 1997).

The Court concludes that the ALJ's written decision fails to cite any evidence that is inconsistent with the plaintiff's central allegation that, following removal of his leg cast in December of 2004, he experienced exacerbated neck and back pain associated with dominant upper right extremity limitation to the extent that neck surgery was required in September of 2005, and he remained unable to work for three moths thereafter until December of 2005, i.e., a period of at least 12 consecutive months. Thus, although the ALJ found the existence of an impairment that could produce pain in the neck, back, and upper extremity during the closed period, at no point in the decision did she explicitly provide reasons for rejecting the plaintiff's testimony regarding the severity of his pain, nor did she "give specific reasons for the weight given to the individual's statements" as required by SSR 96-7p. These failures constitute an error of law that requires a remand for further proceedings. See Wesson v. Astrue, 2008 WL 5382451 (W.D.Ark.) (The ALJ's evaluation of the limitations caused by the claimant's pain and other subjective complaints during the closed period of disability lacked specificity and did not comport with the governing legal standards).

## CONCLUSION

For the foregoing reasons, IT IS ORDERED:

1) this matter is REMANDED to the Commissioner for a new decision evaluating the plaintiff's claim for a closed period of disability during any period of time from the original alleged onset of disability date of July 15, 2004, when he submitted to knee surgery, through March of 2006, after which he resumed substantial gainful activity.

        On remand, the Commissioner is to pay particular attention to the effects of recuperation from knee surgery and neck surgery and the need to wear a leg cast, a neck brace, and a back brace during the closed period upon his ability to work; and

2)     The Commissioner is to develop some probative medical evidence bearing upon the issue of what, during the closed period, the plaintiff could still do despite his impairments; and

3)     The Commissioner is to issue a new decision evaluating the credibility of the plaintiff's complaints of neck pain, back pain, and dominant right upper extremity limitations during the closed period that comports with the specificity requirements of SSR 96-7p.